IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| NICHOLE A. WALLS , on behalf of herself and all similarly situated persons, | No. CH-19-0470-3 |
| PLAINTIFF, | **CLASS ACTION COMPLAINT FOR UNJUST ENRICHMENT; NEGLIGENCE AND NEGLIGENCE *PER SE*; CONSTRUCTIVE FRAUD; DECLARATORY JUDGMENT PURSUANT TO TENN. CODE ANN. § 29-14-103 and 104 AND PERMANENT INJUNCTION; AND PUNITIVE DAMAGES** |
| v. | |
| | **INDIVIDUAL CLAIM FOR VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN § 47-18-104(a) & (b)** |
| BAPTIST MEMORIAL HOSPITAL, also known as BAPTIST MEMORIAL HOSPITAL-MEMPHIS, a Tennessee corporation; and BAPTIST MEMORIAL HEALTHCARE CORPORATION, a Tennessee corporation | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | SHELBY COUNTY CHANCERY COURT MAR 2 7 2019 DONNA L. RUSSELL C & M TIME: 1:05 BY: |

TO THE HONORABLE CHANCELLORS:

Plaintiff Nichole A. Walls, on behalf of herself and all other similarly situated persons,

by and through her designated attorneys, and for her Class Action Complaint alleges as follows:

All allegations in this Complaint are based upon the investigation of counsel, except the specific

allegations pertaining to the named Plaintiff, which are based upon her personal knowledge.  As

of the date of this Complaint, no discovery has been conducted.  As a result, it is likely that once the discovery process is underway, the named Plaintiff will seek leave to amend this Complaint to add new factual allegations, new claims and/or new parties.

## I.

## NATURE OF THE ACTION

1.    This is a class action brought for violations of Tennessee law: (i) Unjust Enrichment, (ii) Negligence and Negligence *Per Se*, (iii) Constructive Fraud, (iv) Declaratory Judgment, TENN. CODE ANN. § 29-14-103 & 104 and Permanent Injunction, and (v) Punitive Damages in order to remedy Defendants' intentional and unlawful practice of "balance billing" Medicare and TennCare patients, a practice in which Defendants bill and collect from Medicare/TennCare patients dollar amounts well beyond the reimbursement amounts paid by Medicare and TennCare, a blatantly illegal process.  As a result, the named Plaintiff and the Class Members seek compensatory and punitive damages and declaratory and permanent injunctive relief for Defendants' wrongful conduct.

2.    Plaintiff additionally brings an individual claim against Defendants for violation of the Tennessee Consumer Protection Act (hereinafter referred to as the "TCPA") of 1977, as amended, TENN. CODE ANN. § 47-18-109(a)(1).

## II.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action by virtue of TENN. CODE ANN. § 16-10-101 *et seq*.

4.    This Court has personal jurisdiction over Defendants Baptist Memorial Hospital and Baptist Memorial Health Care Corporation, pursuant to TENN. CODE ANN. § 20-2-223, on

the grounds that they both have their principal places of business in Tennessee and that the wrongful conduct alleged herein, and the injuries flowing from same, substantially occurred in Tennessee.

5.     Venue is proper in this judicial district pursuant to TENN. CODE ANN. § 20-4-101(a) on the ground that the cause of action arose in Shelby County, Tennessee. Venue is also proper pursuant to TENN. CODE ANN. § 20-4-101(a) and § 16-11-115(1) on the grounds that Defendants Baptist Memorial Hospital –Memphis and Baptist Memorial Health Care Corporation are found and maintain their principal places of business in Shelby County, Tennessee. Venue is also proper in this judicial district pursuant TENN. CODE ANN. § 16-11-115(3) and (4) on the grounds that this county is the location where the services were rendered.

6.     Plaintiff and the putative Class Members (as defined below in paragraph 73) do not assert any federal causes of action. To the contrary, their claims arise solely under Tennessee law. Thus, this action is not subject to removal under 28 U.S.C. § 1331 because Plaintiff asserts no federal claim and expressly disclaims same. Plaintiff shall seek all attorney's fees and costs that they incurred as a result of any removal attempted by Defendants under 28 U.S.C. § 1331, pursuant to 28 U.S.C. § 1447(c).

7.     Defendants Baptist Memorial Hospital – Memphis and Baptist Memorial Health Care Corporation maintain their principal places of business in Tennessee and, thus, are Tennessee citizens. Defendants Baptist Memorial Hospital – Memphis and Baptist Memorial Health Care Corporation are both party defendants from whom significant relief is sought by the named Plaintiff and the Class Members and whose conduct forms a significant basis for the claims asserted by the named Plaintiff and the Class Members. The principal injuries resulting from the wrongful conduct alleged herein were incurred in Tennessee, and no class action has

3

been filed in the preceding three (3) years asserting the same or similar allegations concerning

Defendants' unlawful balance billing scheme. Further, upon information and belief, greater than

two-thirds of the unnamed Class Members are citizens of Tennessee. As a result, federal courts

do not have subject matter jurisdiction over this Class Action under the Class Action Fairness

Act ("CAFA"), as mandated by 28 U.S.C. § 1332(d)(4)(A). Plaintiffs shall seek all attorney's

fees and costs that they incurred as a result of any attempted removal by Defendants under

CAFA, pursuant to 28 U.S.C. § 1447(c).

**III.**

**THE PARTIES**

8.     Plaintiff Nicole A. Walls (hereinafter referred to as "Plaintiff") is an individual

resident of Shelby Countyand proposed representative of a class of individuals who were

covered under Medicare and TennCare and to whom Defendants billed and collected funds for

services covered by Medicare and TennCare in amounts that exceeded the Medicare/TennCare

reimbursement rates paid to, and accepted by, Defendants.

9.     Defendant Baptist Memorial Hospital, also known as Baptist Memorial Hospital–

Memphis, is a corporation duly organized and existing under the laws of the State of Tennessee,

with its principal place of business located at 350 North Humphreys Boulevard, Memphis,

Tennessee 38120. Service of process may be accomplished on Baptist Memorial Hospital –

Memphis via its registered agent for service of process, Greg Duckett, located at 350 North

Humphreys Boulevard, Memphis, Tennessee 38120.

10.     Defendant Baptist Memorial Health Care Corporation is a corporation duly

organized and existing under the laws of the State of Tennessee, with its principal place of

business located at 350 North Humphreys Boulevard, Memphis, Tennessee 38120. Service of

4

process may be accomplished on Baptist Memorial Healthcare Corporation via its registered agent for service of process, Greg Duckett, located at 350 North Humphreys Boulevard, Memphis, Tennessee 38120.

11.     *Upon information and belief, Defendant Baptist Memorial Healthcare Corporation administers and/or controls the unlawful balance billing practices alleged herein of Defendants Baptist Memorial Hospital – Memphis as well as those of its affiliated Tennessee hospitals known as Baptist Memorial Hospital – Carroll County, Baptist Memorial Hospital – Collierville, Baptist Memorial Hospital – Tipton, and Baptist Memorial Hospital – Union City (hereinafter referred to as the "Tennessee Affiliated Hospitals").*

12.     Defendants Baptist Memorial Hospital – Memphis and Baptist Memorial Health Care Corporation are collectively referred to herein as "Defendants."

## IV.

## FACTUAL ALLEGATIONS

**A.     Hospitals in the United States are big business, and Baptist Memorial Hospital is no exception, making millions in revenue and paying millions to its administrators.**

13.     There are approximately 2,900 non-governmental, not-for-profit hospitals in the United States.  The vast majority of these hospitals are community based hospitals, that is, hospitals located in rural areas that focus on acute, short term care for local families.  However, a small fraction of these hospitals (which account for over ninety percent of the gross revenue of all non-governmental, not-for profit hospital care) are located in large metropolitan areas.  For these hospitals, healthcare is big business where the name of the game is profit maximization via the tireless pursuit of reimbursement collection from any and all sources.  Although these hospitals purport to be "not-for-profit," their competitive, for-profit behavior belies such a claim.  Known for opposing each other's applications for certificates of need in order to stifle healthcare

5

competition, absorbing lucrative private physicians groups in order to maximize in-patient care, and even challenging each other's reimbursement rates paid by Medicare and TennCare in order to get a leg up, these hospitals are highly competitive machines that are more about putting "paying fannies in the seats" than they are about charitable healthcare work. Unfortunately, somewhere along the way, these hospitals have lost focus of the essence of their not-for profit mission. The Baptist Memorial Healthcare system is no exception to this.

14.     For the year 2015, Baptist Memorial Hospital –Memphis alone brought in $706,338,048 in total revenue, paid out a staggering $251,339,803 in salaries and employee benefits and posted a net worth of $219,881,156. · All the while, the top administrative brass at Baptist Memorial Hospital –Memphis receives Wall Street-like pay packages: $1,300,954 (President), $955,684 (Vice President/Chief Operating Officer), $694,862 (Secretary), $622,145 (Director); $589, 480 (Administrator).

15.     In order to sustain the massive salaries and employee benefits that its doles out to its employees, Baptist Memorial Hospital is in constant pursuit of maximizing its profit at every stage of its business model. Like other hospital providers, Baptist Memorial Hospital euphemistically denominates this practice as "revenue enhancement."

16.     For example, as a method of "revenue enhancement," Baptist Memorial Hospital has formed lucrative partnerships with for-profit private doctor practice groups, which are designed to augment its profits by taking advantage of its purchasing power as a not-for-profit hospital.

17.     Another method of "revenue enhancement" employed by Baptist Memorial Hospital, as more fully described below, is the practice of receiving reimbursement from Medicare and TennCare for covered services provided to its Medicare/TennCare patients yet

6

billing and collecting from these same patients the "balance" not paid by Medicare/TennCare, in violation of well established law.

**B.**     **Both Federal and Tennessee State Law Prohibit Healthcare Providers from "Balancing Billing" Medicare and TennCare Enrolled Patients for Medicare/TennCare Covered Services.**

18.     In keeping with its drive to garner revenue at all cost, Defendant Baptist Memorial Hospital has engaged in a *de facto* practice of billing and collecting from its Medicare/TennCare patients amounts in excess of those amounts that Medicare/TennCare has reimbursed it for Medicare/TennCare covered medical services. This is a clear violation of both federal and state law.

19.     Medicare – formally known as the "Federal Health Insurance for the Aged and Disabled" – is a federal health insurance program for the elderly and disabled administered by the Centers for Medicare and Medicaid Services ("CMS") under the Department of Health and Human Services.

20.     As part of its administrative duties, the CMS enters into contracts with medical services providers, like hospitals, to provide patient care for Medicare beneficiaries. *See* 42 U.S.C. § 1395cc.

21.     One component of the Medicare system is Medicare "Part A," which provides coverage to Medicare beneficiaries for hospital expense, post-hospitalization care, and related nursing care. *See* 42 U.S.C. § 1395d(a).

22.     Medicare Part A covers those services provided by institutions such as hospitals and applies to Defendants. *See*, 42 U.S.C. §§ 1395c-1395i-4.

23.     Defendants have contracted with CMS, or its designee, and are participating hospital providers under Medicare Part A. As such, when seeking reimbursement for Medicare

covered services, Defendants are required to comply with, *inter alia*, 42 U.S.C. §

1395cc(a)(1)(A).

24.     Section 1395cc(a)(1)(A) of Medicare prohibits Defendants and other participating

hospital providers who apply for and receive reimbursement for Medicare services from seeking

reimbursement from any other source (including the patient) for the same services:

> (a)(1) Any provider of services ... shall be qualified to participate
> under this subchapter and shall be eligible for payments under this
> subchapter if it files with the Secretary an agreement--
>
>> (A) not to charge ... any individual or any other
>> person for items or services for which such
>> individual is entitled to have payment made under
>> this subchapter ...

25.     When a hospital provider obtains reimbursement from Medicare for Medicare

covered services but also seeks to collect from the patient or any other source for additional

amounts for the same services, this is known as "balancing billing" which is prohibited by §

1395cc(a)(1)(A).

26.     Once reimbursement is sought from Medicare, the provider simply cannot collect

any sum (other than co-pays) from the Medicare patient or from any other source.

27.     Courts throughout the nation have recognized this. *See e.g., Froedtert Mem'l*

*Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*, 2009 WI 33, 317 Wis. 2d 54, 765 N.W.2d 251,

2009 Wisc. LEXIS 26 (Wis. 2009) ("Hospitals and other medical services providers under

contract charge each patient at the providers' standard rates for the actual services rendered, and

then Medicare reimburses the providers at the previously contracted Medicare reimbursement

rates. After Medicare has reimbursed the services providers, the providers are prohibited from

trying to collect the remaining balance--the difference between the billed costs of treatment and

8

the Medicare reimbursement payments. They are contractually obligated to accept the Medicare

reimbursement payments as a condition of their participation in the Medicare system"); and

*Stayton v. Del. Health Corp.*, 117 A.3d 521, 2015 Del. LEXIS 288 (Del. 2015) ("When a

healthcare provider like Crozer Burn Center delivers medical services to a patient covered under

Medicare, the provider must submit its bill to the Medicare agency for reimbursement. The

provider cannot seek reimbursement for its medical services from anyone other than Medicare.

Medicare pays, on average, less than one-third of a patient's medical expenses. The healthcare

provider is required to write off the remaining balance, and it cannot collect any further

*payments on that amount*").

28.     Furthermore, 42 U.S.C. § 1395y(b)(2)(A) of Medicare prohibits those medical

providers participating in Medicare from billing Medicare at all if the provider reasonably

expects to be paid by an automobile or liability insurance policy:

> (A)     In general
>
> Payment under this subchapter may not be made, except as
> provided in subparagraph (B),with respect to any item or service
> to the extent that-- ... (ii) payment has been made, or reasonably
> can be expected to be made promptly (as determined in
> accordance with regulations) under a workmen's compensation
> law or plan of the United States or a State or under an automobile
> or liability insurance policy or plan (including a self-insured plan)
> or under no fault insurance.

29.     Therefore, Defendants and other hospitals participating in the Medicare program

are prohibited from billing Medicare where these providers reasonably anticipate that the charges

incurred will be paid by an auto liability policy.

30.     Similarly, both federal and Tennessee state law concerning Medicaid's balance

billing prohibition are virtually identical to that of Medicare.

31.     "The Tennessee Department of Finance and Administration is the Tennessee state

agency that administers the Medicaid program in Tennessee, known as TennCare. TENN. CODE ANN. § 71-5-104; *Tenn. Exec. Order No. 23* (Oct. 19, 1999). *Because the State of Tennessee has joined the federal Medicaid system, it has consequently committed itself to following the federal law governing that system." West v. Shelby County Healthcare Corp.*, No. W2012-00044-COA-R3-CV, 2013 Tenn. App. LEXIS 88, at *45 (Tenn. Ct. App. Feb. 11, 2013).

32.     "'Balance billing' occurs when a hospital bills Medicaid, receives reimbursement for less than the requested amount, and then seeks to recover from the patient the difference between the medical expenses charged and the reimbursement from Medicaid." *Id.* at *54.

33.     As with Medicare, federal law clearly holds that where a health care provider receives reimbursement from Medicaid for a patient's medical services, the health care provider cannot collect or seek to collect any additional amounts (other than co-pays or applicable deductibles) from the patient, the patient's tortfeasor, or any other party, for the same medical services. *See*, *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304 (6th Cir. 2005).

34.     Further, TENN. CODE ANN. § 71-5-117 expressly states that Tennessee's Department administrating TennCare "may require or permit that responsible parties of a recipient of medical assistance supplement or reimburse for any benefit or benefits rendered to the recipient pursuant to this part" only "to the extent permitted by federal law."

35.     In addition, Tennessee Rules and Regulations 1200-13-13-.08 PROVIDERS governing TennCare states, in relevant part, that:

> (1) Payment in full.
>
> (a) All Participating Providers, as defined in this Chapter, must accept as payment in full for provision of covered services to TennCare enrollees, the amounts paid by the MCC plus any copayment required by the TennCare Program to be paid by the individual.

10

* * *

(3) Participation in the TennCare program will be limited to providers who:

> (a) Accept, as payment in full, the amounts paid by the managed care contractor, including copays from the enrollee, or the amounts paid in lieu of the managed care contractor by a third party (Medicare, insurance, etc.);

* * *

> (f) Comply with all contractual terms between the provider and the managed care contractor and TennCare policies as outlined in federal and state rules and regulations and TennCare provider manuals and bulletins.

* * *

(6) Providers may not seek payment from a TennCare enrollee under the following conditions:

* * *

> (c) The provider accepted TennCare assignment on a claim and it is determined that another payer paid an amount equal to or greater than the TennCare allowable amount.

*Id.*; *see also* Tenn. R. & Reg. 1200-13-14-.08

36.    Tennessee's administrative Rules and Regulations governing TennCare, including, Tennessee Rules and Regulations 1200-13-13-.08, "have the force and effect of law in Tennessee." *West v. Shelby County Healthcare Corp.*, No. 2013 Tenn. App. LEXIS 88, at *64.

37.    Thus, the Tennessee Court of Appeals has declared that, under Tennessee law, where a health care provider receives reimbursement from TennCare for a patient's medical services, the health care provider cannot collect or seek to collect any additional amounts (other than co-pays or applicable deductibles) from the patient, the patient's tortfeasor, or any other party, for the same medical services. *See, West v. Shelby County Healthcare Corp.*, 2013 Tenn.

11

App. LEXIS 88 at *70-71 (holding that TennCare state regulations governing payments in full "are in keeping with the mandates of the federal statute: '[I]n the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the services may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of any amount for that service . . . .' 42 U.S.C. § 1396a(a)(25)(C)... Accordingly, the hospital has the choice of accepting sure payment, or foregoing that payment in favor of the possibility of a larger payment later, but it cannot do both").

38.     As a result, under Tennessee law, Tennessee medical providers cannot receive reimbursement from TennCare but also seek to receive a larger amount from a patient or from any settlement or funds to which the patient may be entitled. *Id.* at 71-72 ("Here, the [medical provider] did accept payment from Medicaid and, after accepting such payment, continued to assert its lien. Under the reasoning of the foregoing cases, we conclude that this practice [balance billing] is not authorized under federal and Tennessee law. Once the hospital accepts payment from TennCare at the rate prescribed in the hospital services agreement, the hospital has received the benefit of its bargain-a price certain payment. As a third-party beneficiary of the agreement between the provider and the government, the patient's debt is extinguished by payment of the agreed-upon amount and the hospital may not hold its lien open pending possible larger payment at some future date. Accordingly, the hospital has the choice of accepting sure payment, or foregoing that payment in favor of the possibility of a larger payment later, but it cannot do both.")

39.     There is a strong public policy supporting the prohibition of "balance billing" Medicare/TennCare enrollees as mandated by federal law as well as by TENN. CODE ANN. § 71-

5-117 and Tennessee Rules and Regulations 1200-13-13-.08.

40.     This strong public policy exists because, *inter alia*: Medicare and TennCare is a health insurance program for the elderly, the disabled and the indigent – as opposed to a medical service insurer for hospitals and other medical providers.

41.     Thus, if providers were allowed to balance bill Medicare and TennCare patients, those patients would effectively be uninsured, which is clearly inapposite to the goals of Medicare and TennCare and the care for the elderly, disbabled and indigent which they seek to insure. *Id.* at 70 - 71 ("What the [the hospital] seeks, then, is to convert the system into an insurance program for hospitals rather than for indigent patients. It wants to be reimbursed by TennCare when the patient is indigent and still retain the right to enforce its lien should the patient win a settlement from a third-party. This is a classic example of wanting to both have the proverbial cake, and eat it, too").

42.     Indeed, if Defendants were legally entitled to balance bill their Medicare and TennCare patients, then Defendants would have rendered Plaintiffs and the Class Members effectively "uninsured," thus subjecting these patients to Defendants' full, non-negotiated rates buried in their charge master billing lists, known as "BMH Standard Charges."

43.     Of course, to the extent Defendants seek to claim in this action that they are entitled to balance bill these patients, such conduct would then violate Tennessee statutory law that limits the amount that Defendants can bill to uninsured persons.

44.     Specifically, TENN. ANN. CODE § 68-11-262(a) prohibits Defendants from charging uninsured patients more that 175% of "the cost for the services provided, calculated using the cost to charge ratio in the most recent joint annual report." The charges imposed on Plaintiff and the Class Members dramatically exceed this cap.

13

C.     **Defendant Baptist Memorial Hospital Treats Plaintiff for Injuries in a Car Accident for Which Defendants Balance Bill Plaintiff in Violation of Tennessee Law.**

45.     On or about November 5, 2017, Plaintiff was injured in an automobile accident. That day, Plaintiff presented at Defendant Baptist Memorial Hospital's emergency room for injuries pain resulting from the accident. At the time presentment, Plaintiff provided Defendants with her Medicare identification number.

46.     In fact, Plaintiff was then and is now enrolled as a "Dual Eligible Beneficiary" under Medicare and Medicaid, meaning that she is entitled to medical benefits under both Medicare and Medicaid due to her status.

47.     Pursuant to Defendants' policy and practice, Defendants inquired whether Plaintiff was injured in an accident. Plaintiff informed Defendants she had been injured as the result of an automobile accident caused by another driver.

48.     Pursuant to Defendants' policy and practice, Defendants inquired whether she had any automobile liability coverage. Plaintiff responded that she had automobile liability insurance with Shelter Insurance.

49.     Defendant Baptist Memorial Hospital examined Plaintiff, conducted X rays and a CT scan, gave her some Advil and Tylenol and discharged her the same day.

50.     Defendant Baptist Memorial Hospital racked up a total of $11,128.13 in medical charges (hereinafter referred to as the "Medicare Covered Services") that it reflected in its books and records as being owed by Plaintiff.

51.     Defendants then submitted the Medicare Covered Services with respect to Plaintiff to Medicare and/or CMS for reimbursement.

52.     Medicare paid to Defendant Baptist Memorial Hospital $437.27 for the Medicare Covered Services. (Medicare also remitted $38.80 and $36.48 to a Dr. C.M. Bruno for services

14

performed for Plaintiff at Defendant Baptist Memorial Hospital).

53. The payment of $437.27 to Defendant Baptist Memorial Hospital constituted full reimbursement to it for the Medicare Covered Services.

54. As a Medicare enrollee who had received medical services covered by Medicare, Medicare fully performed its legal obligation to reimburse Defendants and, thus, Plaintiff received from Medicare all of the relief that she was entitled to receive from Medicare.

55. In addition to receiving $437.27 as full reimbursement for the Medicare Covered Services, Defendants also contacted Shelter Insurance, Plaintiff's automobile liability insurer, to make a demand that it tender funds to Defendant Baptist Memorial Hospital under Shelter's "MedPay" provision of Plaintiff's liability insurance policy for sums in excess of the $437.27 paid by Medicare.

56. MedPay, also known as Medical Payment Coverage, is an insurance provision in automobile liability policies which covers the payment for medical services up to $5000 that are incurred as a result of an accident, no matter who caused the accident. As Defendants are well aware, MedPay is contained in virtually every automobile insurance policy issued in Tennessee.

57. Defendants' demand upon Shelter to pay it sums under Plaintiff's liability policy constituted "balance billing" and was unlawful under Tennessee law.

58. Pursuant to Defendants' demand, Shelter paid to Defendant Baptist Memorial Hospital $5000 for the Medicare Covered Services.

59. Following the payments of Medicare and Shelter, Defendant Baptist Memorial Hospital's books and records still reflected that Plaintiff's account balance was $5,208.14. Unknown to Plaintiff, Defendants intended to collect this balance from her, including the possibility of collecting it from any settlement she might receive from the tortfeasor who caused

15

her accident.

60.    On or about October 4, 2018, Plaintiff filed a lawsuit against the owners of the motor vehicle that struck her car and caused her injury, thus leading to her incur the Medicare Covered Services at Defendant Baptist Memorial Hospital.

61.    Plaintiff later settled her auto negligence lawsuit. As part of her settlement, the defendants in that lawsuit  required Plaintiff to pay any claims of indebtedness associated with the medical services she received, including the Medicare Covered Services, Shelter's MedPay lien and all other outstanding medical charges incurred by Plaintiff as a result of the amounts incurred as a .

62.    Pursuant to Tennessee law, Plaintiff was further required to pay reimburse Medicare for the amount it paid to Defendant Baptist Memorial Hospital (and to Dr. Bruno) out of her settlement funds.

63.    Additionally, pursuant to Tennessee law, Plaintiff was legally required to pay $3,333.00 (the $5,000.00 that Shelter paid, less a one-third attorney's fee for recovering this amount) as subrogation to Shelter, which had paid $5,000.00 to Defendant Baptist Memorial Hospital as a result of Defendants' unlawful balancing billing.  Defendants have, therefore, proximately caused Plaintiff damage in the amount of $3,333 by virtue of their unlawful acts.

64.    At the time of her settlement, Defendants informed Plaintiff that Plaintiff still owed a balance of $5,208.14 and that Defendant Baptist Memorial Hospital should be paid this amount from her settlement in order to satisfy her indebtedness.

65.    As a result, in order to satisfy Defendants demand for payment, Plaintiff paid this additional amount, which also constitutes unlawful balance billing.

16

**D.** **Defendants' Unlawful Balance Billing Practices Caused Substantial Damages to the Class Members.**

66.     Plaintiff's experience with Defendants' unlawful balance billing is not isolated and unique.

67.     To the contrary, Defendants have a policy and practice of inquiring with every Medicare/TennCare patient whether they were hurt as the result of another person or entity's fault and whether these patients have coverage under any automobile liability policy. Defendants do so with the intent of seeking collection under the MedPay provision or other applicable provisions of these policies.  Defendants then bill Medicare and TennCare and Medicare/TennCare for covered services, but also unlawfully seek collection against the MedPay provisions of these patients' liability policies. Such a practice constitutes illegal balance billing.

68.     Furthermore, regardless of whether these patients have any liability policies containing MedPay provisions, Defendants also balance bill their patients by receiving TennCare and Medicare payments but nevertheless maintaining a "balance" owed by these patients when in truth they owe nothing more once TennCare and Medicare has paid for their covered services. Defendants then seek to collect and often do collect these sums from their patient's tort settlements or otherwise.

69.     Plaintiff and the putative Class Members have received all that they are entitled to receive from TennCare and Medicare and, therefore, allege no wrongdoing or liability on the part of TennCare and Medicare.

**E.** **The Damages to the Class Members Are Estimated to Be At Least $7.8 Million.**

70.     Defendants' books and records will demonstrate the exact total amount of money that they balanced billed the Class Members during last six (6) years preceding this Class Action Complaint, which is the applicable Class period. Plaintiff at this juncture can only estimate the

17

Class Members' damages.

71.     Assuming that Defendants balanced billed just five (5) Medicare/TennCare

patients per week for services at Defendants Baptist Memorial Hospital – Memphis or at any of

the Tennessee Affiliated Hospitals and collected $5000 in MedPay from each one (with no other

payments from these patients or third-parties other than Medicare or TennCare), Defendants

would have unlawfully received $7,800,000.00 from their balancing billing scheme.

72.     Plaintiff suspects that this number will be substantially larger when those amounts

paid the Class Members (directly or through any settlement) are discovered and included.

## V.

## CLASS ACTION ALLEGATIONS

73.     The named Plaintiff brings this action as a Class Action pursuant to Rules 23.01

and 23.02(1), (2) and/or 23.02(3) of the Tennessee Rules of Civil Procedure on behalf of:

> For the time period of six (6) years preceding the filing of
> Plaintiff's Class Action Complaint to the present, Plaintiff and all
> similarly situated persons who are Tennessee residents and were
> enrolled in Medicare and/or TennCare, received Medicare and/or
> TennCare covered medical services from Defendants and/or the
> Tennessee Affiliated Hospitals for which these hospital providers
> received reimbursement from Medicare and/or TennCare, and
> who paid (directly or through any third party) to these hospital
> providers any amount in excess of the reimbursement amounts
> allowed for and paid by Medicare and/or TennCare.

> Excluded from the Class are the named Defendants, their
> agents, affiliates, and employees, the Judge assigned to this
> matter and his or her staff.

74.     **Numerosity.**  The requirements of Rule 23.01(1) are satisfied in that there are too

many Class Members for joinder of all of them to be practicable.  Upon information and belief

there are hundreds if not thousands of individuals who have been balanced billed by Defendants

in violation of Tennessee law. Thus, the Class is so numerous that joinder of all members in a

single action is impracticable. The Class Members are readily identifiable from the information and records in Defendants' possession or control.

75. **Commonality.** The claims of the Class Members raise numerous common issues of fact and law, thereby satisfying the requirements of Rule 23.01(2). These common legal and factual questions, which do not vary from one Class Member to another, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following questions:

**Questions of Fact**

(i)   Whether Defendants billed Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare and TennCare for Medicare and TennCare covered services.

(ii)   What is the total amount that Defendants collected from Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services.

(iii)   Whether Defendants failed to disclose to Plaintiff and the Class Members that they intended to bill and collect from them or third parties amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services.

(iv)   Whether Defendants' unlawful billing and collecting from Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services was negligent, reckless, or intentional.

(v)   Whether punitive damages should be accessed against Defendants for any

19

reckless or intentional misconduct.

**Questions of Law**

(i)     Whether Defendants were unjustly enriched by billing and collecting from Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services.

(ii)    Whether declaratory relief should be granted to the Class Members pursuant to the Declaratory Judgment Act, TENN. CODE ANN. § 29-14-103 and 104 declaring that Defendants' practice of billing and collecting from Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services is unlawful.

(iii)   Whether a permanent injunction should be granted against Defendants so as prohibit Defendants' practice of billing and collecting from Plaintiff and the Class Members for amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services is unlawful.

(iv)    Whether Defendants owed a duty to disclose to Plaintiff and the Class Members that they intended to bill and collect from Plaintiff and the Class Members amounts in excess of those reimbursement amounts that they received from Medicare/TennCare for Medicare/TennCare covered services.

76.     **Typicality**.  The claim of the named Plaintiff is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23.01(3). For example, the named Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured or damaged by the same wrongful practices in which Defendants engaged, namely

20

the unlawful practice of balancing billing Medicare and TennCare patients.

77.    **Adequacy of Representation.** The requirements of Rule 23.01(4) are satisfied in

that the named Plaintiff has a sufficient stake in the litigation to vigorously prosecute his claim

on behalf of the Class Members and the named Plaintiff's interests are aligned with those of the

proposed class. There are no defenses of a unique nature that may be asserted against Plaintiff

individually, as distinguished from the other members of the Class, and the relief sought is

common to the Class.  Plaintiff does not have any interest that is in conflict with or is

antagonistic to the interests of the members of the Class, and has no conflict with any other

member of the Class.

78.    Plaintiff has retained competent counsel experienced in class action litigation,

including consumer and financial services class actions, to represent her and the Class in this

litigation.  To wit, Plaintiffs' chosen counsel – Watson Burns, PLLC – has successfully

prosecuted class actions in several matters. *See, e.g., Howard et al  v. Wilkes & McHugh, P.A.,*

Case No. 2:06-cv-02833-JMP-cgc (W.D. Tenn. Filed 2006) (appointing Watson Burns, PLLC as

Class Counsel and ultimately approving $4 million settlement in connection with overcharged

legal fee); *Manjunatha A. Gokare, P.C. and Goldstein, Borgen, Dardarian & Ho, P.C. v.*

*Federal Express Corporation, et al.,* Case No. 2:11-cv-2131-JTF-cgc (W.D. Tenn. Filed Nov.

11, 2011) (appointing Watson Burns co-lead class counsel representing nationwide class in

breach of contract and RICO claims against international freight shipper alleging overcharging

*for residential delivery surcharge fees for delivers made to non-residential locations;* nationwide

class was certified and a settlement of $26 million was approved); *Youngblood v. Linebarger,*

*Goggan, Blair & Sampson, LLP,* Case No. 10-cv-2304 SHM-tmp (W.D. Tenn. filed Mar 10,

2010) (Watson Burns appointed lead class counsel representing plaintiff class of 48,000

21

delinquent taxpayers against Texas law firm alleging that Linebarger charged and received an unlawful legal fee from tax payers when pursuing property tax collection suits on behalf of the City of Memphis; the class was certified and ultimately settled for $7.4 million); *Ham v. Swift Transportation Co., Inc.*, 275 F.R.D. 475 (W.D. Tenn. 2011) (Watson Burns appointed co-lead class counsel representing plaintiff class against national trucking company challenging the testing practices of a commercial truck driving; class-wide settlement case achieved for compensatory damages and debt write off valued in excess of $17 million).

79.    **Declaratory Relief**. Alternatively, all of the requirements for Rule 23.02(1)(a) and (2) also are satisfied in that the Defendants' actions affected all Class Members in the same manner, making appropriate final declaratory relief with respect to the class as a whole. For example, Plaintiff seeks with respect to the class as a whole a declaration that Defendants were obligated to the Class Members to submit their medical service charges to the private insurance carriers of the Class and wrongfully breached this obligation. Furthermore, without a Class adjudication of this issue, individual litigation will very likely lead to inconsistent obligations imposed on Defendants.

80.    **Predominance and Superiority.** Alternatively, all of the requirements for Rule 23.02(3) are satisfied in that class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. *See, Wofford v. M.J. Edwards & Sons Funeral Home, Inc.*, 528 S.W.2d 524 (Tenn. Ct. App. 2017). While the aggregate damages sustained by the Class are likely millions of dollars, the individual damages incurred by each Class Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting

separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Individual members of the class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system resulting in multiple trials of the same factual issue and creating the possibility of repetitious litigation. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance of a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole.

81. **Dispositive Adjudication.** This class action also meets the criteria of Rule 23.02(1)(b) because adjudication of individual Class Members' claims involving the alleged breach of Tennessee law prohibiting balance billing and, thus, would as a practical matter be dispositive of other Class Members not actual parties to this matter. Indeed, if Defendants breached their common law obligations to Plaintiff, Defendants will have also breached the identical obligations to the Class Members. As a result, certification under Rule 23.02(1)(b) is appropriate.

## VI.

## CAUSES OF ACTION

### COUNT 1 – UNJUST ENRICHMENT

82.     Plaintiff incorporates all allegations in all preceding paragraphs as if fully set forth fully herein.

83.     Under Tennessee law, Defendants are prohibited from balance billing and collecting from Medicare/TennCare patients. *See, West v. Shelby County Healthcare Corp.*, No. W2012-00044-COA-R3-CV, 2013 Tenn. App. LEXIS 88, at *45 (Tenn. Ct. App. Feb. 11, 2013).

84.     In an endeavor to reap higher reimbursement rates from the assets of Plaintiff and the Class Members, however, Defendants balanced billed Plaintiff and the Class Members, recovering millions of dollars in amounts exceeding the applicable reimbursement rates paid to Defendants by TennCare and Medicare for these same services.

85.     By paying these unlawful medical charges, Plaintiff and the Class Members have conferred a significant monetary benefit upon Defendants.  Defendants received these funds and thus appreciated this significant benefit.

86.     In light of the fact that balance billing is clearly an unlawful practice, Defendants' acceptance of this significant benefit, under such circumstances, renders it inequitable for Defendants to retain the benefit without payment of the value thereof.

### COUNT 2 – NEGLIGENCE AND NEGLIGENCE *PER SE*

87.     Plaintiff incorporates all allegations in all preceding paragraphs as if fully set forth fully

88.     Under Tennessee law, Defendants are prohibited from balance billing and collecting from Medicare/TennCare patients. *See, West v. Shelby County Healthcare Corp.*, No. W2012-00044-COA-R3-CV, 2013 Tenn. App. LEXIS 88, at *45 (Tenn. Ct. App. Feb. 11, 2013).

24

89.     Plaintiff and the other Class Member Medicare/TennCare patients of Defendants are the exact class of persons that Medicare/TennCare statutes, regulations and common law interpreting same are designed to protect.

90.     As a result, Defendants owed Plaintiff and the Class the ordinary duty of care to comply with the billing restrictions of Medicare/TennCare, which Defendants failed to do and their breach of same constitutes ordinary negligence and/or negligence *per se*.

91.     As a direct and proximate cause of these duties, Defendants have caused Plaintiff and the Class to suffer damages.

## COUNT 3 – CONSTRUCTIVE FRAUD

92.     Plaintiff incorporates all allegations in all preceding paragraphs as if set forth fully herein.

93.     As alleged above, Defendants' owed the legal obligation to Plaintiff and the Class Members to submit all Medicare/TennCare services to Medicare/TennCare and to refrain from seeking reimbursement from any other source from these same Medicare/TennCare covered services. Defendants, however, did not intend to honor this legal obligation in those circumstances where Defendants believed it could obtain payment from Plaintiff and the Class Members' assets, via any tort settlement owed to Plaintiff and the Class Members by the third parties who were responsible for the injuries necessitating medical treatment performed by Defendants and/or from the Med Pay provisions of their liability insurance policies.

94.     Thus, Defendants billed and collected from Medicare/TennCare for Medicare/TennCare covered services as well as billed and collected from their Medicare/TennCare patients. Defendants did so in order to obtain substantially more money than they could have otherwise lawfully received from Medicare/TennCare alone.

95.     Defendants' acts and/or omissions in this regard operated as virtual fraud on

25

Plaintiff and the Class Members and/or which, if generally permitted, would be prejudicial to the public welfare and were not clearly resolvable into mere accident or mistake.

96.     Under constructive fraud, it is irrelevant whether, in the opinion of Defendants, their actions were justifiable, allowable or allegedly unconnected with any selfish, evil design or intent to defraud.  Therefore, by engaging in the above described misconduct, and by committing the actions and omissions alleged in this Complaint, Defendants have committed constructive fraud despite that any claim by them that their omissions and actions were made without any intent to defraud and/or that they believed their actions were justifiable or allowable.

97.     As a direct and proximate cause of Defendants' constructive fraud, Plaintiff and the Class Members are entitled to receive restitution and or compensatory damages in the amount representing all those amounts received by Defendants in their unlawful scheme.

**COUNT 4 – DECLARATORY JUDGMENT PURSUANT TO TENN. CODE ANN. § 29-14-103 and 104 AND PERMANENT INJUNCTION**

98.     Plaintiff incorporates all allegations of in all preceding paragraphs as if set forth fully herein.

99.     Pursuant to the Declaratory Judgment Act, TENN. CODE ANN. § 29-14-103 and 104, Plaintiff and the Class Members request a declaratory judgment against Defendants, finding that their practices constitute balance billing in violation of Tennessee law and requiring Defendants to disgorge all amounts and declaring any "balance owed" by the Class Members to be null and void.

100.     Pursuant to Rule 65.01(3) of the Tennessee Rules of Civil Procedure, Plaintiff and the Class Members request the Court to impose a Permanent Injunction which enjoins Defendants from further balance billing TennCare and Medicare patients.

## COUNT 5 - PUNITIVE DAMAGES

101.    Plaintiff incorporates all allegations in all preceding paragraphs as if fully set forth in this Complaint.

102.    Each Defendant alleged herein acted intentionally and/or recklessly with respect to their wrongful conduct because they were aware, but consciously disregarded, the substantial and unjustifiable harm that they would cause to Plaintiff and the Class Members by virtue of their balance billing.  As a result, Defendants' actions and omissions constituted a reckless and/or gross deviation from the standard of care that an ordinary person would exercise under the circumstances.

103.    Because of Defendants' wrongful conduct, punitive damages are warranted in order to punish Defendants and to deter them from future misconduct.

104.    With respect to the applicable factors that may be addressed by the fact finder when determining punitive damages, Plaintiff would allege as follows:

(i)      Defendants' financial affairs, financial condition and net worth range in the multimillions of dollars;

(ii)     The nature and reprehensibility of Defendants' wrongdoing is substantial because Defendant have intentionally or recklessly abused and taken advantage of a class of persons who are elderly, disabled and/or indigent;

(iii)    Defendants were aware of the harm that could and would be caused to Plaintiff and the Class Members with respect to their wrongful conduct;

(iv)     Defendants' misconduct has spanned several years;

(v)      In order to recover their losses, Plaintiff and the Class Members

27

will incur substantial costs;

(vi)     Defendants profited significantly from the unlawful collection of
their medical services directly from the assets of Plaintiff and the Class, and, as a
result, a significant punitive award is the only method to deter future similar
misconduct.

105.    Based upon the above allegations and factors, Plaintiff and the Class Members
would respectfully request entry of a punitive award in an amount to be determined by the trier
of fact.

106.    Pursuant to *Lindenberg v. Jackson Nat'l Life Ins. Co.*, Nos. 17-6034/6079, 2018
U.S. App. LEXIS 36097, 2018 FED App. 0280P (6th Cir. Dec. 21, 2018), the punitive damages
limitation set forth in TENNESSEE CODE ANNOTATED § 29-39-104(a)(5) is null and void on the
basis that it violates the Tennessee Constitution. As a result, this limitation cannot apply to any
punitive damage award that may be rendered by the trier of fact in this case.

## COUNT 6 – VIOLATIONS OF TCPA, TENN. CODE ANN § 47-18-104(a) & (b)
## (Individual Claim Only)

107.    Plaintiff incorporates all allegations in all preceding paragraphs as if fully set
forth in this Count.

108.    The TCPA, TENN. CODE ANN. § 47-18-109(a)(1), provides that "[a]ny person who
suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article,
commodity, or thing of value wherever situated, as a result of the use or employment by another
person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an
action individually to recover actual damages."

109.    Plaintiff is a natural person and, as such, constitutes "person" as that term is

28

defined by the TCPA, TENN. CODE ANN. § 47-18-103(13) and, thus, falls within the meaning of the term "any person" as contained in the TCPA, § 47-18-109(a)(1). Although TCPA, § 47-18-109(a)(1) does not require any person asserting a claim there under to also constitute a consumer, Plaintiff does, in fact, constitute a "consumer" as that term is defined by TCPA, TENN. CODE ANN. § 47-18-103(2) because, *inter alia*, Plaintiff acquired medical services from Defendants by making a co-payment to them and by assigning her Medicare benefits to Defendants in connection with same.

110.    Defendants constitute a "person" as defined by the TCPA, TENN. CODE ANN. § 47-18-103(13) and fall within the meaning of the term "another person" as contained in the TCPA, § 47-18-109(a)(1). The provision of medical services to Plaintiff and the Class by Defendants constitutes "services" as that term is defined by TCPA, TENN. CODE ANN. § 47-18-103(18).

111.    Pursuant to the TCPA, TENN. CODE ANN. § 47-18-109(a)(1), Plaintiff is entitled to bring a private action for Defendant's violations of the TCPA because, among other things, she has suffered an ascertainable loss of money.

112.    Defendants' wrongful conduct violates TENN. CODE ANN. § 47-18-104(5) because Defendants represented that their services carried with it characteristics and benefits (namely, the submission of her medical charges to Medicare/TennCare in a lawful manner) which Defendants would in fact not provide.

113.    Defendants' wrongful conduct also violates TENN. CODE ANN. § 47-18-104(12) because Defendants represented that their services involved rights and obligations (namely, the submission of her medical charges to Medicare/TennCare in a lawful manner) which Defendants in fact did not provide.

114.     Pursuant to the TCPA, TENN. CODE ANN. § 47-18-109(3), Defendants' unfair or deceptive conduct was willful and/or knowing and, thus, Plaintiff is entitled to an award of three (3) times her compensatory damages. Plaintiff further alleges that she is entitled to an award of her reasonable attorney's fees and costs, as provided for under TENN. CODE ANN. § 47-18-109(e)(1).

115.     Lastly, pursuant to TENN. CODE ANN. § 47-18-109(b), Plaintiff seeks a judgment declaring that the above described conduct constitutes an unfair act or practice in violation of the TCPA and enjoining Defendants from further engaging in such unfair acts and/or practices.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendants Baptist Memorial Hospital – Memphis and Baptist Memorial Health Care Corporation, on each Count of the Complaint and the following relief:

1.     Issue service of process and serve each Defendant;

2.     Issue an Order certifying that this action may be maintained as a Class Action, appointing Plaintiff and her counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to the Class Members;

3.     Grant any reasonable request to Amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this class action;

4.     Empanel a jury to try this matter;

5.     Award Plaintiff and the Class Members compensatory damages in an amount not less than $7,800,000.00;

30

6.      Award pre-and post-judgment interest in the amount of 10% per annum pursuant to Tenn. Code Ann. § 47-14-123 in an amount according to the proof at trial with respect to Plaintiff and the Class Members' liquidated damages awarded;

7.      Grant declaratory relief to Plaintiff and the Class Members as requested herein;

8.      Enjoin Defendants from further engaging in the wrongful conduct alleged herein;

9.      Award punitive damages against each Defendant in an amount not less than $15,600,000.00;

10.      Award costs and expenses incurred in this action pursuant to Rule 54.01 of the Tennessee Rules of Civil Procedure;

11.      Award Plaintiff her reasonable attorney's fees and cost with respect to her individual claim arising under the TCPA, pursuant Tenn. Code Ann. § 47-18-109(e)(1).

12.      Grant the Plaintiff Class Members such further relief as the Court may deem just and proper.

Respectfully submitted,

*[signature]*

Frank L. Watson, III (Tenn. Bar No. 15073)
William F. Burns (Tenn. Bar No. 17908)
William E. Routt (Tenn. Bar No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998

*Counsel for Plaintiff Nicole A. Walls and the
putative Class Members*

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS\*\*** | DOCKET NUMBER<br>CH- 19-0470-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Nichole A. Walls | Baptist Memorial Hospital & Baptist Memorial Hlthcare |

TO:   (NAME AND ADDRESS OF DEFENDANT)

Baptist Memorial Hospital-Memphis

c/o Registered Agent for Service of Process

Greg Duckett

350 Humphreys Blvd.

Memphis, TN 38120

Method of Service:

☐ Shelby County Sheriff
☑ Private Process Server
☐ Out of County Sheriff\*
☐ Secretary of State\*
☐ Comm. Of Insurance\*
☐ Certified Mail
☐ Other
\*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the Complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se:<br>(Name, address & telephone number) | ISSUED 27 of March , 20 19 |
|---|---|
| Frank L. Watson, III | |
| WatsonBurns, PLLC | Donna L. Russell, Clerk and Master |
| 253 Adams Avenue, Mphs, TN 38103 | By: _____ |
| 901.529.7996 | Deputy Clerk & Master<br>140 Adams, Room 308   Memphis, TN 38103 |
| TO THE SHERIFF: | Came to hand |
| | _____ day of _____ |
| | Sheriff |

| CERTIFICATION (IF APPLICABLE) | |
|---|---|
| I, Donna L. Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Donna L. Russell, Clerk & Master<br>By: _____<br>D. C. & M. |

\*\*Submit one original and one copy for each defendant to be served.

♿ If you need assistance or accommodations because of a disability, please call the ADA Coordinator at (901)222-2341.

Notice of Personal Property Exemption:
TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and certain trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the _30_ day of _March_ , 20 _19_ at _12:05 PM_ am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _Baptist Memorial Hospital-Memphis by_

_Serving Catherine Keller, staff attorney, at 350 Humphreys Blvd Memphis TN_

By: _Walter E Smith_

_____    Sheriff or other authorized person to serve process
Signature of person accepting service

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant _____ because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____.

This _____ day of _____, 20 _____

By: _____
Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to the

defendant _____. On the _____ day of _____, 20_____, I

received the return receipt, which had been signed by _____ on the _____ day of _____,

20 _____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _4_ day of _April_ , 20 _19_ . | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of _X_ Notary Public or _____ Deputy Court Clerk: | |
| _Annette J. Teddy_ | _____ |
| My Commission Expires: | |
| ANNETTE J. LIDDLE<br>STATE OF TENNESSEE<br>NOTARY PUBLIC<br>SHELBY COUNTY<br>My Comm. Exp. Nov. 21, 2021 | |
| ATTACH RETURN<br><br>RECEIPT HERE<br><br>(IF APPLICABLE) | |

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS**\*\* | DOCKET NUMBER CH- 19-0470-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| Nichole A. Walls | Baptist Memorial Hospital & Baptist Memorial Hlthcare |

TO:   (NAME AND ADDRESS OF DEFENDANT)

Baptist Memorial Healthcare Corporation

c/o Registered Agent for Service of Process

Greg Duckett

350 Humphreys Blvd.

Memphis, TN 38120

Method of Service:

☐ Shelby County Sheriff
☑ Private Process Server
☐ Out of County Sheriff
☐ Secretary of State
☐ Comm. Of Insurance
☐ Certified Mail
☐ Other
  \*Attach Required Fees

RECEIVED
CHANCERY COURT
APR 05 2019
SHELBY COUNTY

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the Complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se: (Name, address & telephone number) | ISSUED 27 of March , 20 19 |
|---|---|
| Frank L. Watson, III | |
| WatsonBurns, PLLC | Donna L. Russell, Clerk and Master |
| 253 Adams Avenue, Mphs, TN 38103 | By: |
| 901.529.7996 | Deputy Clerk & Master |
| | 140 Adams, Room 308   Memphis, TN 38103 |

| TO THE SHERIFF: | Came to hand |
|---|---|
| | _____ day of _____ , 20 _____ |
| | Sheriff |

| **CERTIFICATION (IF APPLICABLE)** | |
|---|---|
| I, Donna L. Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | Donna L. Russell, Clerk & Master By: _____ D. C. & M. |

\*\*Submit one original and one copy for each defendant to be served.

♿ If you need assistance or accommodations because of a disability, please call the ADA Coordinator at (901)222-2341.

**Notice of Personal Property Exemption:**
  TO THE DEFENDANT(S):
      Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the ___28___ day of ___March___, 20 19 at 12:05 PM am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _Baptist Memorial Healthcare Corp. by serving_

_Catherine Keller, staff attorney, at 350 Humphreys Blvd Memphis TN_

By: X Walter E Mull

_____                    _____
Signature of person accepting service                    Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant _____ because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____

This _____ day of _____, 20 _____

By: _____
                    Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to the

defendant _____. On the _____ day of _____, 20_____, I

received the return receipt, which had been signed by _____ on the _____ day of _____,

20 _____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this 4 day of<br><br>April, 20 19.<br><br>Signature of X Notary Public or ___ Deputy Court Clerk:<br><br>_Annette J. Liddle_<br><br>My Commission Expires:<br><br>ANNETTE J. LIDDLE<br>STATE OF TENNESSEE<br>NOTARY PUBLIC<br>SHELBY COUNTY<br>My Comm. Exp. Nov. 21, 2021<br><br>ATTACH RETURN<br><br>RECEIPT HERE<br><br>(IF APPLICABLE) | Signature of Plaintiff, Plaintiff's attorney or other person<br>authorized by statute to serve process.<br><br>_____<br><br>_____ |

ELECTRONICALLY FILED
2019 Apr 15 3:08 PM
CLERK OF COURT

IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| NICHOLE A. WALLS , on behalf of herself and all similarly situated persons,<br><br>PLAINTIFF,<br><br>v.<br><br><br><br><br><br><br><br><br><br><br><br>BAPTIST MEMORIAL HOSPITAL, also known as BAPTIST MEMORIAL HOSPITAL-MEMPHIS, a Tennessee corporation; and BAPTIST MEMORIAL HEALTHCARE CORPORATION, a Tennessee corporation<br><br><br><br>DEFENDANTS. | **No. CH-19-0470 Part III**<br><br>**(Hon. Chancellor JoeDae Jenkins)**<br><br>**CLASS ACTION COMPLAINT FOR UNJUST ENRICHMENT; NEGLIGENCE AND NEGLIGENCE *PER SE*; CONSTRUCTIVE FRAUD; DECLARATORY JUDGMENT PURSUANT TO TENN. CODE ANN. § 29-14-103 and 104 AND PERMANENT INJUNCTION; AND PUNITIVE DAMAGES**<br><br>**INDIVIDUAL CLAIM FOR VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN § 47-18-104(a) & (b)**<br><br>**JURY TRIAL DEMANDED** |

---

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES AND REQUESTS FOR ADMISSIONS PROPOUNDED TO DEFENDANT BAPTIST MEMORIAL HOSPITAL – MEMPHIS**

---

Comes now Plaintiff Nicole A. Walls, on behalf of herself and all similarly situated

persons, by and through their undersigned counsel of record, pursuant to Rules 26.01, 33.01, and

34.01 of the Tennessee Rules of Civil Procedure and submits her **First Requests for Production**

of Documents, Interrogatories and Requests for Admissions to Defendant **Baptist**

**Memorial Hospital – Memphis** (hereinafter referred to as the "Requests").

Responses to these Requests should be produced according to the Tennessee Rules of

Civil Procedure at the offices of **WATSON BURNS PLLC,** 253 Adams Avenue, Memphis,

Tennessee 38103 for inspection and photocopying.  Documents produced should include

everything in the possession, custody, or control of Defendant, and all those in privity with it,

relating to the following Requests.

These Requests shall be deemed continuing so as to require supplemental responses

pursuant to Tennessee Rule of Civil Procedure 26.05 if the Defendant, or anyone in privity with

it, obtains further or different information between the time the responses are served and the time

of trial.  The Requests shall be produced in accordance with the Definitions and Instructions set

forth below.

## I.      DEFINITIONS AND INSTRUCTIONS

1.      The term "**Balancing Billing**" shall mean have the same meaning as defined and

contained in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint filed in this

proceeding.

2.      The term "**Class Member(s)**" shall have the same meaning as contained in

paragraph 73 of Plaintiff's Class Action Complaint filed in this proceeding.

3.      As used herein, the terms "**concerning**," "**referring**," "**relating**," "**in connection**

**with**" and/or "**incident to**" in reference to a given subject matter means any information,

document or communication which constitutes, contains, embodies, comprises, reflects,

identifies, states or refers to, deals with, comments on, responds to, describes, analyzes, or is in

any way pertinent to the subject matter including, without limitation, any documents which mention said person or subject by name or any variant thereof.

4.      The term "**Defendant**" shall mean the entity BAPTIST MEMORIAL HOSPITAL, also known as BAPTIST MEMORIAL HOSPITAL-MEMPHIS, a Tennessee corporation, and its officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

5.      The term "**identify**" with respect to a person, corporation or organization means to state the name, address, title and phone number of same.

6.      The term "**identify**" when used with respect to any act, occurrence, statement, conversation or conduct means to describe the substance of the event constituting same; the date each occurred; the identity of each and every person participating therein; the identity of all persons present when it occurred; whether any record of same has been made; whether in minutes, notes, memoranda, or other recordation; whether such material now exists; and the identity of the custodian of same.  As an alternative to identifying a given document, the party, individual, or entity may produce such document as an exhibit or attachment to the Answers to these Requests.

7.      The term "**document(s)**" means, without limitation, the following items, whether printed or recorded or maintained in any electronic format, or written or produced by hand: e-mails, portable document format files, tagged image file format files, electronically stored data and information, agreements, communications, reports, correspondence, telegrams, telexes, memoranda, summaries of records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of

3

investigations or negotiations, opinions or reports of consultants or experts, drafts, letters, any marginal comments appearing on any documents, and all other writings.

8.      Unless otherwise indicated, the term "**relevant time period**" used throughout these Requests shall mean and refer to the period of time from March 27, 2013 to the present. All information and documents which refer to this period should include all information whether prepared or collected before, during or after the period if responsive to any given question.

9.      The term "**representative**" shall mean any and all agents, owners, members, employees, servants, officers, directors, associates or other persons acting or purporting to act on **Defendant's** behalf.

10.     The terms "**you**," and "**your**" shall each refer to BAPTIST MEMORIAL HOSPITAL, also known as BAPTIST MEMORIAL HOSPITAL-MEMPHIS, a Tennessee corporation; its affiliate companies, and officers, directors, employees, agents, servants, representatives, investigators, attorneys and accountants.

11.     The term "**MedPay**", also known as Medical Payment Coverage, shall refer to an insurance provision in automobile liability policies which covers the payment for medical services up to $5,000 that are incurred as a result of an accident, no matter who caused the accident.

12.     These Document Requests are intended to cover all documents and electronically stored information in the possession, custody or control of **Defendant** and its agents or representatives, or to which any of them may have the right of possession, custody or control.

13.     If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not answering any question, or any part thereof, please provide each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full

4

determination whether the claim of privilege is valid, in complete detail. With respect to a document to which a privilege is being claimed, the following information at the very minimum should be provided:

    (a)    date;

    (b)    author;

    (c)    names and addresses of any persons who received copies, if any;

    (d)    title;

    (e)    type of tangible thing, letter, memorandum, telegram, report, etc.; and

    (f)    general description of the subject matter (without revealing privileged information).

14.    These Document Requests shall be deemed to continuing and any information or documents relating in any way to these Interrogatories which you acquire, which become known to you up to and including the time of trial, shall be furnished by you to Plaintiff within a reasonable time after such information is acquired or becomes known.

15.    If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details of the circumstances leading to the loss or destruction of the document.

## II.    REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  For the **relevant time period**, please produce all **documents** (including emails, audio and/or visual recordings, statements, training manuals, etc.) **concerning, referring or relating** to any **Balance Billing** conducted by **Defendant**.

**RESPONSE:**

**REQUEST NO. 2:**  Please produce all **documents** (including emails, audio and/or visual

5

recordings, bills, payment records, statements, etc.) **concerning, referring or relating** to any communications with and/or medical treatment provided to Nichole A. Walls.

**RESPONSE:**

**REQUEST NO. 3:**  For the **relevant time period** , please produce all **documents** (including emails, audio and/or visual recordings and statements) **concerning, referring or relating** to any complaints made to **You** by any person or entity concerning or relating to the practice of **Balance Billing** as defined herein.

**RESPONSE:**

**REQUEST NO. 4:**  For the **relevant time period** , please produce all **documents,** including but not limited to all governmental (state or federal) advisories or bulletins, policy manuals or statements, internal training manuals or statements that in any way relate to the practice of **Balance Billing** as defined herein.

**RESPONSE:**

**REQUEST NO. 5:**   For the **relevant time period,** please produce all **documents** (including payment ledgers, checks, accounting documentation, etc.) demonstrating payments made to **Defendants** by any automobile insurance company (**MedPay**) for medical services provided by **You** to any Medicare/TennCare patient.

**RESPONSE:**

**REQUEST NO. 6:**   For the **relevant time period,** please produce all **documents** (including payment ledgers, checks, accounting documentation, etc.) demonstrating payments (excluding co-pays) made to **Defendants** by any third party or entity other than Medicare or TennCare for medical services provided by **You** to any Medicare/TennCare patient.

**RESPONSE:**

**REQUEST NO. 7:**   For the **relevant time period,** please produce all **documents** (including letters, emails, demands, etc.) demonstrating all hospital liens filed (or sent) by **You** to any person relating to medical services **Defendant** provided to any Medicare/TennCare patient.

   **RESPONSE:**

**REQUEST NO. 8:**   For the **relevant time period,** please produce all **documents** (including letters, emails, demands, etc.) demonstrating all claims for subrogation **You** sent to any person or entity relating to medical services **Defendant** provided to any Medicare/TennCare patient.

   **RESPONSE:**

**REQUEST NO. 9:**   For the **relevant time period,** please produce all **documents** (including payment ledgers, checks, accounting documentation, etc.) demonstrating payments received by **Defendant** relating to any hospital lien or subrogation lien asserted by **You** against any person or entity relating to medical services **Defendant** provided to any Medicare/TennCare patient.

   **RESPONSE:**

**REQUEST NO. 10:**   Please produce any and all documents which support, demonstrate or illustrate any response (or is referenced in any response) to any Interrogatory propounded herein on **You.**

   **RESPONSE:**

**REQUEST NO. 11:**   Please produce all **documents** (including emails, audio and/or visual recordings and statements) **concerning, referring or relating** or supporting any of the Affirmative Defenses asserted in **Defendant's** Answer.

   **RESPONSE:**

### III.    INTERROGATORIES

**INTERROGATORY NO. 1:  Identify** the name, address, position and/or title of each and every person, if anyone, who was responsible for responding to the above document Requests, including all persons who searched for, located and/or possess any **documents** requested above and **identify** the names, addresses, position and/or title of each and every person that assisting in responding to these Interrogatories.

**RESPONSE:**

**INTERROGATORY NO. 2:  Identify** the name, home address, position and/or title of each and every person who has worked for **You** in any medical billing and/or tort subrogation department from March 27, 2013 to the present and include each person's name, title, work email, and current work status.

**RESPONSE:**

**INTERROGATORY NO. 3:** Please **identify** and describe all written and recorded statements taken regarding the subject matter of this litigation and state the **identity** of each person giving such statement, each person having custody thereof, and the form of the statement and the date the statement was made or taken and who has such statement.

**RESPONSE:**

**INTERROGATORY NO. 4:** Please **identify** each and every person who has knowledge of any facts relative to this litigation or defenses to this litigation, specifically describe the potential knowledge each person possesses and who they came to possess such knowledge.

**Please note this Interrogatory does not seek the disclosure of attorney work product or mental impressions pertaining to those individuals that will actually be called to testify at the trial of this matter.  This Interrogatory only seeks the identity of those individuals having knowledge of relevant information in any way pertaining to this lawsuit.  Please**

note the Plaintiff will object to the introduction of trial testimony from any individual not identified in your response to this Interrogatory.

RESPONSE:

**INTERROGATORY NO. 5:**  Please **identify** the name, address and telephone number of each and every person you expect to call as an expert witness in the trial of this case.  Include in your answer a statement of the subject matter of which the expert is expected to testify, a statement setting forth the form and substance of the facts and opinions to which the expert is expected to testify and a statement setting forth the summary of the grounds for each such opinion.

RESPONSE:

Please note that the Plaintiff will object to any person testifying as an expert at trial who is not listed in the Response to this Interrogatory.

**INTERROGATORY NO. 6:**  Please **identify** and describe **Your** practice of billing and collecting charges for medical services from Medicare/TennCare patients beyond and above the reimbursement amounts paid by Medicare/TennCare for those same medical services.

RESPONSE:

**INTERROGATORY NO. 7:**  Please **identify** the names of all individuals that sought medical treatment from any Baptist location in Tennessee from March 27, 2013 through the present that were enrolled in Medicare and/or TennCare (at the time of medical treatment) that were "**Balancing Billed**" as defined and contained in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint.

RESPONSE:

**INTERROGATORY NO. 8:**  Please **identify** the names of all individuals that sought medical treatment from any Baptist location in Tennessee from March 27, 2013 through the

9

present that were enrolled in Medicare and/or TennCare (at the time of medical treatment) from

which Baptist received any type of payment for that patients' medical care from an automobile

insurance company.

RESPONSE:

**INTERROGATORY NO. 9**:  Please **identify** the total dollar amount of all payments

Baptist received from any automobile insurance company from March 27, 2013 through the

present related to medical services provided to Baptist's patients who were enrolled in Medicare

and/or TennCare at the time of the provision of medical services.

RESPONSE:

**INTERROGATORY NO. 10**:  Please **identify** the names of all individuals that sought

medical treatment from any Baptist location in Tennessee from March 27, 2013 through the

present that were enrolled in Medicare and/or TennCare (at the time of medical treatment) from

which Baptist received any type of payment ***from any source other*** than Medicare or TennCare

(meaning CMS or any governmental payor) and patient co-pays/deductibles for medical services

provided to such patients.

RESPONSE:

**INTERROGATORY NO. 11**:  Please **identify** the total dollar amount of all payments

Baptist received from any source other than Medicare and/or TennCare from March 27, 2013

through the present related to medical services provided to Baptist's patients who were enrolled

in Medicare or TennCare (at the time of the provision of medical services.)

RESPONSE:

**INTERROGATORY NO. 12**:  Please **identify** the names of all individuals that sought

medical treatment from any Baptist location in Tennessee from March 27, 2013 through the

10

present that were enrolled in Medicare and/or TennCare (at the time of medical treatment) from which Baptist asserted any type of hospital lien or right to subrogation against such patient.

**RESPONSE:**

**INTERROGATORY NO. 13:** Please **identify** the total dollar amount of all payments Baptist received from March 27, 2013 through the present derived from or related to asserting hospital liens or subrogation claims on Baptist patients that were enrolled in Medicare and/or TennCare at the time of Baptist proved medical treatment to such patients.

**RESPONSE:**

**INTERROGATORY NO. 14:** Do **You** assert or contend that any person or entity that is not currently a defendant in this lawsuit is in any way at fault or responsible for any of the damages and/or injuries alleged in the Complaint? If so, **identify** each such person or entity and state the facts upon which **You** base **Your** assertion of comparative fault and/or that any such person or entity caused the damages and injuries suffered by **Plaintiff or Class Members**, including the duty owed and breached, and the causal relationship between the duty breached and the damages sustained.

**RESPONSE:**

**INTERROGATORY NO. 15:** Please **identify** the names of all individuals that are in charge of (or responsible for) Baptist's billing compliance requirements from March 27, 2013 through the present, i.e., all those individual employees of Baptist whose job duties include ensuring that Baptist complies with all laws, rules and regulations related to billing of Medicare and/or TennCare patients.

**RESPONSE:**

**INTERROGATORY NO. 16:** **Identify** all current and former employees of Baptist that

11

have worked in Baptist's billing department from March 27, 2013 through the present that would have had any responsibilities relating to billing Medicare and/or TennCare patients.  If Baptist uses a third party company for such services, please so state and **identify** said company.

 **RESPONSE:**

 **INTERROGATORY NO. 17:**  **Identify** all current and former employees of Baptist that worked in any capacity for Baptist related to asserting hospital liens and/or any type of subrogation for Baptist from March 27, 2013 through the present.  If Baptist uses a third party company for such services, please so state and **identify** said company.

 **RESPONSE:**

 **INTERROGATORY NO. 18:**  **Identify** the name and location of all hospitals, clinics, or outpatient facilities owned and controlled by **You** or by Baptist Memorial Healthcare Corporation from March 27, 2013 through the present in the State of Tennessee that provide medical services to Medicare and/or TennCare patients.

 **RESPONSE:**

 **INTERROGATORY NO. 19:**  **Identify** whether **You** use (or have ever used) a third party corporation, entity or person to handle **Your** medical billing.  If so, please **identify** such corporation, entity or person and **identify** which Baptist use these billing services.

 **RESPONSE:**

 **INTERROGATORY NO. 20:**  **Identify** the name, manufacturer, and the operating version of any billing software used by **You** during the **relevant time period**.

 **RESPONSE:**

 **INTERROGATORY NO. 21:**  **Identify** the name and title of the Baptist employee (or employees) that have the most knowledge of **Your** billing practices related to Medicare and/or

TennCare patients during the **relevant time period.** If this person (or persons) has changed during or throughout the **relevant time period**, please **identify** all such persons and **identify** which year they worked at Baptist.

**RESPONSE:**

## IV.   REQUESTS FOR ADMISSIONS

**REQUEST NO. 1:** **Admit** that **You** "**Balancing Billed**" Nichole A. Walls as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint.

**REQUEST NO. 2:** **Admit** that "**Balancing Billing**" as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint is illegal.

**REQUEST NO. 3:** **Admit** that when **You** "**Balance Bill**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) a TennCare patient such practice violates Tennessee state law.

**REQUEST NO. 4:** **Admit** that when **You** "**Balance Bill**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) a Medicare patient such practice violates federal law.

**REQUEST NO. 5:** **Admit** that when a hospital provider obtains reimbursement from Medicare for Medicare covered services but also seeks to collect from the patient (other than for co-pays) or any other source for additional amounts for the same services this practice is known as "balancing billing" in the hospital industry.

**REQUEST NO. 6:** **Admit** that "balance billing" as defined in Request No. 5 above as it relates to a Medicare patient is prohibited by 42 U.S.C. § 1395cc(a)(1)(A).

**REQUEST NO. 7:** **Admit** that **You** are contractually obligated to not "balance bill" (as defined in Request No. 5 above) Medicare patients.

13

**REQUEST NO. 8**:  **Admit** that when **You** provide medical services to a patient covered under Medicare, **You** must submit **Your** bill for services to the Medicare agency for reimbursement.

**REQUEST NO. 9**:  **Admit** that **You** are contractually obligated to accept the Medicare reimbursement payments as a condition of **Your** participation in the Medicare system.

**REQUEST NO. 10**:  **Admit** that 42 U.S.C. § 1395y(b)(2)(A) prohibits medical providers participating in Medicare from billing Medicare at all if the provider reasonably expects to be paid by an automobile or liability insurance policy.

**REQUEST NO. 11**:  **Admit** that when **You** bill a Medicare patient's automobile insurance company and accept MedPay payments and then also bill Medicare for these same services, **You** have submitted a "false claim" to the federal government.

**REQUEST NO. 12**:  **Admit** that Tennessee law states that where a health care provider receives reimbursement from TennCare for a patient's medical services, the health care provider cannot collect or seek to collect any additional amounts (other than co-pays or applicable deductibles) from the patient, the patient's tortfeasor, or any other party, for the same medical services.

**REQUEST NO. 13**:  **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 100 Medicare patients during the **relevant time period.**

**REQUEST NO. 14**:  **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 250 Medicare patients during the **relevant time period.**

**REQUEST NO. 15:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 500 Medicare patients during the **relevant time period.**

**REQUEST NO. 16:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 1,000 Medicare patients during the **relevant time period.**

**REQUEST NO. 17:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 2,000 Medicare patients during the **relevant time period.**

**REQUEST NO. 18:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 100 TennCare patients during the **relevant time period.**

**REQUEST NO. 19:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 250 TennCare patients during the **relevant time period.**

**REQUEST NO. 20:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 500 TennCare patients during the **relevant time period.**

**REQUEST NO. 21:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 1,000 TennCare patients during the **relevant time period.**

**REQUEST NO. 22:** **Admit** that **You** have "**Balance Billed**" (as that term is defined and described in paragraphs 25, 26, and 32 of Plaintiff's Class Action Complaint) over 2,000 TennCare patients during the **relevant time period.**

**REQUEST NO. 23:** **Admit** that **You** routinely bill TennCare for the same medical services that you bill automobile insurance carriers for TennCare patients.

**REQUEST NO. 24:** **Admit** that **You** have routinely "**Balance billed**" Medicare for the same medical services that you bill automobile insurance carriers for Medicare patients.

Respectfully submitted,

William F. Burns (Tenn. Bar No. 17908)
Frank L. Watson, III (Tenn. Bar No. 15073)
William E. Routt (Tenn. Bar No. 28577)
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, Tennessee 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email: fwatson@watsonburns.com
Email: bburns@watsonburns.com

16

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served on this the 9th day of April, 2019, via **FEDERAL EXPRESS 8130 0076 0399**, charges prepaid and addressed as follows:

Catherine Keller, Esq.
Baptist Memorial Hospital-Memphis
350 Humphreys Blvd.
Memphis, Tennessee 38120

WILLIAM F. BURNS

17